UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DWIGHT W. B., [1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 1:20-cv-02048-JPH-DML |
| | ) |
| KILOLO KIJAKAZI Acting Commissioner | ) |
| of Social Security[2], | ) |
| | ) |
| Defendant. | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff, Dwight B., seeks judicial review of the Social Security

Administration's decision denying his petition for Disability Insurance Benefits

and Supplemental Security Income.  He argues that the ALJ erred by (1) failing

to subpoena Plaintiff's treating source records from his psychotherapist; and

(2) concluding that Plaintiff could return to his past work as generally

performed.  Dkt. 12 at 4.  For the reasons that follow, the decision is

**AFFIRMED.**

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent
with the recommendation of the Court Administration and Case Management
Committee of the Administrative Office of the United States Courts, the Southern
District of Indiana has opted to use only the first name and last initial of non-
governmental parties in its Social Security judicial review opinions.

[2] Under Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul
from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi
automatically became the Defendant in this case when she was named as the Acting
Commissioner of the SSA.

# I.
## Facts and Background

On January 20, 2017, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income, alleging that his disability began on December 7, 2016.  Dkt. 10-2 at 22.  Plaintiff's application was initially denied on June 2, 2017, and on reconsideration on November 8, 2017.  *Id.* Administrative Law Judge (ALJ) Fredric Roberson held a hearing and in May 2019 issued a decision denying Plaintiff's claims.  *Id.*

In his decision, the ALJ followed the five-step sequential evaluation in 20 C.F.R. § 404.1520(a)(4) and concluded that Plaintiff was not disabled.  *Id.* at 23–30.  Specifically, the ALJ found that:

- At Step One, Plaintiff had not engaged in substantial gainful activity[3] since the alleged onset date.  *Id.* at 24.

- At Step Two, he had "the following severe impairment: degenerative disc disease of the lumbar with facet degeneration and obesity." *Id.*

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  *Id.* at 27.

- After Step Three but before Step Four, Plaintiff had the RFC "to perform light work . . . except he can occasionally climb stairs and ramps, but never climb ladders, ropes, or scaffolds.  He can occasionally balance, stoop, and kneel, but cannot crouch or crawl.  Lastly, he must avoid concentrated exposure to extreme cold, dangerous machinery, and unprotected heights." *Id.*

---

[3] Substantial gainful activity is defined as work activity that is both substantial (involving significant physical or mental activities) and gainful (usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a).

- At Step Four, Plaintiff was "capable of performing past relevant work as a service station cashier. This work does not require the performance of work-related activities precluded by" Plaintiff's RFC. *Id.* at 29.

- At Step Five, Plaintiff was not under a disability, as defined by the Social Security Act, during the relevant time period. *Id.* at 30.

The Appeals Council denied review in June 2020, *id.* at 1, 8, and in August 2020, Plaintiff brought this action asking the Court to review the denial of benefits under 42 U.S.C. § 405(g), dkt. 1.

## II.
## Applicable Law

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). When an applicant seeks judicial review of a benefits denial, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v), evaluating in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step

four." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).  After step three, but before step four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).  The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and, if not, at step five to determine whether the claimant can perform other work.  *See* 20 C.F.R. § 404.1520(e), (g).

If the ALJ committed no legal error and substantial evidence supports the ALJ's decision, the Court must affirm the benefit denial.  *Stephens*, 888 F.3d at 327.  When an ALJ's decision does not apply the correct legal standard or is not supported by substantial evidence, a remand for further proceedings is typically appropriate.  *See Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).

### III.
### Analysis

Plaintiff argues that the ALJ erred by (1) failing to fully develop the record when he did not issue a subpoena to Plaintiff's psychotherapist for his treating source records in advance of the hearing, and (2) concluding Plaintiff "could return to his past work as it is generally performed" despite the fact that Plaintiff's prior position is a composite job.  Dkt. 12 at 4.  The Commissioner responds that Plaintiff has failed to establish "that the ALJ abused his discretion when he declined to issue a subpoena" or "that his past relevant work as a service-station cashier was a composite job."  Dkt. 13 at 1.

### A. Failure to Issue the Subpoena

An ALJ has "discretion to issue a prehearing subpoena." *Krell v. Saul,* 931 F.3d 582, 586 (7th Cir. 2019).  The ALJ "may do so when the subpoena is 'reasonably necessary for the full presentation of a case' and when certain 'facts could not be proven without issuing a subpoena.'" *Id.* (quoting 20 C.F.R. § 404.950(d)).  A party's allegation that a subpoena is necessary does "not automatically make it so." *Id.* (citing *Butera v. Apfel,* 173 F.3d 1049, 1058–59 (7th Cir. 1999)).  Instead, the requesting party must "state the important facts that the witness or document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena." *Butera*, 173 F.3d at 1058 (quoting 20 C.F.R. §§ 404.950(d)(2), 416.1450(d)(2)).

Bruce Fazer, LCSW, is Plaintiff's therapist and has treated him for posttraumatic stress disorder, including "periods of Major Depression and anxiety," since 1989.  Dkt. 10-9 at 155.  Two weeks before Plaintiff's May 2019 hearing, his "attorney representative submitted a written request to the ALJ to subpoena treating therapist Mr. Frazer for his treatment records."  Dkt. 12 at 20; dkt. 10-6 at 2 (subpoena request).  The request provided Mr. Frazer's name and title, the address of his office, the relevant time period for the records sought, and the date of the hearing for which the records were needed.  Dkt. 10-6 at 2.  It further stated that Plaintiff had requested records from Mr. Frazer but he was "refusing to honor the request." *Id.*  The request did not provide any additional detail about the nature or content of the records sought or the specific reason they were needed. *Id.*  The subpoena never issued.

However, after the Plaintiff submitted his subpoena request to the ALJ, Mr. Frazer voluntarily submitted a Mental Impairment Questionnaire, which was received before the hearing.  Dkt. 12 at 20 (stating that Plaintiff submitted subpoena request on May 15, 2019); dkt. 10-2 at 25 (explaining that hearing record contains medical statement from Dr. Frazer dated May 22, 2019).

Plaintiff argues that the ALJ erred in failing to issue the requested subpoena because "[the] missing records would provide a much clearer impression of [his] mental health."  Dkt. 12 at 21.  Specifically, Plaintiff points out that Mr. Frazer's "treating medical source statement" of Plaintiff's mental limitations is given little weight in the ALJ's decision because "the record is essentially devoid of exams from" Dr. Frazer to support his statement, among other reasons.  Dkt. 10-2 at 20  (quoting dkt. 10-2 at 25 (ALJ decision)). According to Plaintiff, because the ALJ "found the record devoid of exams from Mr. Frazer, he triggered his duty to develop the medical record" by issuing the subpoena.  *Id.* at 20–21; *see Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) ("[T]he ALJ in a Social Security hearing has a duty to develop a full and fair record.").  The Commissioner responds that Plaintiff did not establish "that the subpoena was 'necessary' or that any responsive documents exist."  Dkt. 13 at 5.  The Commissioner further contends that the ALJ did not abuse his discretion in deciding not to issue the subpoena because "the agency's other efforts to develop the record were more than adequate."  *Id.* at 5–6.

Social Security regulations require Plaintiff to submit a written request "stat[ing] the important facts that the [treatment notes are] expected to prove;

and indicat[ing] why these facts could not be proven without issuing a

subpoena." 20 C.F.R. §§ 404.950(d)(2); *see Butera*, 173 F.3d at 1058.  In

*Butera*, the Seventh Circuit found that the plaintiff "fell short of fulfilling [these]

regulatory requirement[s]" because he "offered no convincing argument why

[the subpoena] was necessary in his particular case."  173 F.3d at 1058.  The

court rejected the argument that "the right to subpoena [] is 'absolute' in the

sense that a party who requests a subpoena is automatically entitled to its

issuance whether or not he has complied with the published rules governing

such matters." *Id.* (quoting *Calvin v. Chater*, 73 F.3d 87, 92 (6th Cir. 1999));

*see also DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998) (explaining

that even though plaintiff was "surely correct to argue on appeal that his old

disability file might have proven to be 'highly relevant,'" his subpoena request

"did not include any of the required information"); *Passmore v. Astrue*, 533 F.3d

658, 666 (8th Cir. 2008).

Here, Plaintiff's written subpoena request did not specify any facts that

he believed his records would show. Dkt. 10-6 at 89.  Rather, it stated only

that he had requested the records, the request had been received, and that Mr.

Frazer's office was not honoring that request.  *Id.*  The request also did not

explain why the records were necessary to the full presentation of Plaintiff's

case, leaving the ALJ to infer that information on his own.  Therefore, Plaintiff's

written request did not meet the requirements of § 404.950(d)(2).  Later at the

hearing, after Mr. Frazer had submitted his Mental Impairment Questionnaire,

Plaintiff stated that he had "[n]o objections" to the exhibits in the record at the

hearing.  Dkt. 10-2 at 38 (hearing transcript).  At this point, Plaintiff could have renewed his request for the subpoena, using the Mental Impairment Questionnaire to explain why the additional records were necessary.  Plaintiff did not avail himself of that opportunity.

In sum, Plaintiff did not state in his written subpoena request what "important facts" were contained in the records he sought, and he did not explain why that information was "reasonably necessary to the full presentation of the case."  *Cf. Butera*, 173 F.3d at 1058–59.  Therefore, the record does not show that the ALJ abused his discretion when he did not issue a prehearing subpoena.  *Id.*; *DeChirico*, 134 F.3d at 1184.  The ALJ's determination regarding Plaintiff's mental health limitations will be affirmed if supported by substantial evidence.  *Stephens*, 888 F.3d at 327.

Turning to the record evidence at the time of Plaintiff's hearing, the ALJ considered the following in assessing Plaintiff's mental impairments: a consultative psychological examination, input from his treating psychiatrist, the "Mental Impairment Questionnaire" submitted by Mr. Frazer, opinions from State Agency consultants, and Plaintiff's testimony about his mental health problems.  Dkt. 10-2 at 24–25.  The ALJ gave "significant weight" to the opinion of the mental consultative examiner and the State Agency psychological consultants because they were consistent with the overall medical evidence.  Dkt. 10-2 at 25–26.  Both opined that Plaintiff's mental impairments were not severe enough to impact his ability to perform daily and work activities.  *Id.*  Consistent with these opinions, Plaintiff "generally denied depressed or anxious

mood" and testified that "his mental health problems do not interfere with his ability to work."  *Id.* at 25.

The ALJ gave little weight to the opinions of Plaintiff's psychiatrist—Dr. Tandy—and his psychotherapist—Mr. Frazer.  *Id.*  Dr. Tandy and Mr. Frazer both indicated that Plaintiff had either moderate or marked limitations in all "four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders."  *Id.* at 25–26.  The ALJ noted that both opinions contradicted not only the overall medical evidence, but also that both opinions contained statements that contradicted their respective conclusions.  *Id.* at 25.  For example, Dr. Tandy's medical notes indicated a lower degree of mental impairment than that indicated by his report, and in May 2018 he noted that Plaintiff's "mood was stable."  *Id.*  Similarly, Mr. Frazer admitted in the Mental Impairment Questionnaire that Plaintiff "is stable with psychotherapy and medications," but he "opined [Plaintiff] is unemployable due to mental symptoms."  *Id.*  For these reasons, and because Mr. Frazer's opinion was inconsistent with the overall medical evidence and Plaintiff's testimony, it was given little weight.

Between Plaintiff's testimony, the consultative psychological examination, and the opinions from State Agency consultants, there was substantial evidence in the record on which the ALJ could base a decision on Plaintiff's limitations due to his mental impairments.  Therefore, as in *Simila v. Astrue*, the record evidence in this case was not "inadequate" such that it was reasonably necessary to issue Plaintiff's requested subpoena to fully develop

the record.  573 F.3d 503, 516 (7th Cir. 2009).  Rather, the "ALJ simply found that [the] evidence failed to support [Mr. Frazer's] conclusions," *id.* at 516–17, and therefore gave the conclusions little weight in determining Plaintiff's mental impairments.

In sum, the ALJ's determination about Plaintiff's mental health impairments was supported by substantial evidence including a consultative psychological examination, opinions from State Agency consultants, and Plaintiff's testimony.  Therefore, the record does not show that the ALJ abused his discretion when he chose to not issue a subpoena to Mr. Frazer and then to give his opinion little weight in assessing the effect of Plaintiff's depression.

## B. Plaintiff's Ability to Perform Past Work

Plaintiff argues that his duties at his past work "far exceeded that of the cashier position the vocational expert identified and should rightfully be considered a composite job." Dkt. 12 at 4.  As a result, the ALJ erred in concluding that Plaintiff can "return to his past work as it is generally performed." *Id.*  The Commissioner responds that Plaintiff forfeited this argument by failing to raise it at the hearing.  Dkt. 13 at 7.  The Commissioner further contends that the ALJ's Step Four determination was supported by substantial evidence and that Plaintiff has failed to offer contrary evidence that his past work was a composite job.  *Id.*

"A claimant is not disabled if he can do his past relevant work either in the manner he performed it before the impairment *or* in the manner it is generally performed in the national economy." *Ray v. Berryhill*, 915 F.3d 486,

10

491 (7th Cir. 2019). "But if the prior position was a composite job, then the ALJ may not reference it when determining whether a claimant can perform his past job as it is generally performed." *Id.* A composite job is a job with "significant elements of two or more occupations and, as such, ha[s] no counterpart in the" Administration's "Dictionary of Occupational Titles" (DOT). *Jerry Z. v. Saul*, 2020 WL 4034930 *4 (S.D. Ind. July 16, 2020) (quoting SSR 82-61).

The ALJ determined that Plaintiff can perform his past relevant work as it is generally performed based on Plaintiff's description of his former job duties and testimony from a Vocational Expert (VE). Dkt. 10-2 at 29–30. After listening to Plaintiff's description of his past work at the hearing, the VE characterized Plaintiff's job as a "service-station cashier," classified as light work per the DOT but "medium as [Plaintiff] described" it. Dkt. 10-2 at 61–62 (hearing transcript). In response to hypothetical questions from the ALJ, the VE further opined that Plaintiff can perform his past work as it is "generally performed, but not as [Plaintiff] performed it, as he performed at the medium level." *Id.* at 62. When asked if his testimony was "consistent with the DOT," the VE responded: "Except where as otherwise noted, Judge, yes." *Id.* at 64. Plaintiff did not object to the VE's characterization of his past work as a service station cashier, nor did he argue at the hearing that his past work was a composite job. *See generally id.* at 37–65.

Because Plaintiff did not object to the VE's testimony at the hearing, he cannot raise it now. *See Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016)

(explaining that claimant forfeited argument that VE's testimony was incorrect by failing to object during administrative hearing); *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).  Aside from testifying about specific job duties that exceeded the scope of a cashier position, Plaintiff did not offer any evidence that his former job was a composite job, or even suggest that it was a composite job.  Moreover, the VE's opinion that Plaintiff cannot perform his past work as *actually* performed shows that he considered Plaintiff's additional job duties in forming his opinion.  Therefore, the ALJ was entitled to rely on the VE's unchallenged and uncontradicted testimony that Plaintiff can perform his past work as generally performed.  *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) ("When no one questions the [VE]'s foundation or reasoning, an ALJ is entitled to accept the [VE]'s conclusion . . . ."); *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004).

In sum, the VE's unchallenged testimony supports the ALJ's conclusion, and Plaintiff failed to argue or present contradictory evidence establishing that his past work was a composite job.  Therefore, the ALJ's conclusion that Plaintiff can return to his past work as generally performed is supported by substantial evidence.

### IV.
### Conclusion

The Court **AFFIRMS** the ALJ's decision denying the Plaintiff benefits. Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 3/31/2022

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Lindsay Beyer Payne
SOCIAL SECURITY ADMINISTRATION
lindsay.payne@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov

Kirsten Elaine Wold
HANKEY LAW OFFICE
kew@hankeylaw.com

13